UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE D. TILLMON,

    *Plaintiff*,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    *Defendant*.

No. 24-cv-01176 (DLF)

## MEMORANDUM OPINION AND ORDER

Antoine Tillmon brings this action pro se against the Washington Metropolitan Area Transit Authority (WMATA) under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* Am. Compl., Dkt. 8. He alleges that WMATA took various retaliatory and discriminatory actions in response to him exercising his FMLA rights. Before the Court is WMATA's Motion to Dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, under Rule 12(b)(6).[1] Dkt. 17. For the reasons that follow, the Court will grant WMATA's motion.

**I.     BACKGROUND**

Tillmon has been employed by WMATA since at least 2017, first as a train operator, Am. Compl. ¶ 4, and later as a bus operator, *id*. ¶ 1. Tillmon first "applied and was approved for FMLA" in 2017. *Id.* ¶ 4. In June 2023, "due to the overwhelming stress and demand" of the job,

---

[1] Although WMATA styles its motion as one to dismiss under Rule 12(b)(1) for lack of jurisdiction, it argues in the alternative that Tillmon has failed to allege a family-care-related medical leave claim under the FMLA, Mot. to Dismiss, at 5 n.1, Dkt. 17. Because the Court will construe Tillmon's pro se complaint liberally to assert a family-care-related medical leave claim, it will also address WMATA's alternate argument under Rule 12(b)(6).

he sought to be approved for FMLA a second time. *Id.* By July 17, Tillmon was notified that "his FMLA was approved for taking a full day off work twice per month per [his] doctor's request for [Tillmon's] mental health condition." *Id.* ¶ 6.

Tilllmon used his approved two monthly days off throughout the fall of 2023. *Id.* ¶¶ 7–24. In October, Tillmon called in "to be absent for Family Sick" because his "son was involved in a car accident." *Id.* ¶ 14. He ended up taking "five days [off] to care for his son." *Id.* When Tillmon returned to work, WMATA required him to undergo drug and alcohol testing. *Id.* ¶ 15.

WMATA later placed Tillmon on administrative leave while they investigated an incident related to improper operation of a train. *Id.* ¶¶ 25–27. Based on the results of that investigation, Tillmon was "disqualified and terminated as a Train Operator," and was placed on leave without pay. *Id.* ¶ 28. Tillmon maintains that the findings in the investigation report are "erroneous." *Id.*. In February 2024, he returned to work for WMATA as a bus operator. *Id.* ¶ 32. Tillmon alleges that WMATA continued to discriminate against him because of his FMLA accommodation after he resumed work as a bus operator. *Id.* ¶¶ 33–39.

Tillmon initiated this lawsuit on April 23, 2024, and filed his amended complaint on May 14, 2024. Dkts. 1, 8. He alleges that he was subject to "unwarranted scrutiny, disciplinary measures, and retaliatory practices" because of "his requests for medical leave and accommodations." Opp'n, at 1, Dkt. 19. WMATA missed the answer deadline, and Tillmon moved several times for entry of default judgment. Dkts. 10, 11, 12. The Court initially entered default judgment, but the default was ultimately excused. Dkt. 13; Minute Order of June 13, 2024. WMATA then filed this motion to dismiss for lack of jurisdiction, or in the alternative, for failure to state a claim. Dkt. 17.

## II.     LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because "[s]overeign immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), claims barred by the United States' sovereign immunity are "subject to dismissal under Rule 12(b)(1)," *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013). When reviewing a motion to dismiss for lack of jurisdiction, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). At the same time, plaintiffs bear the burden of establishing subject-matter jurisdiction, *see Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), and courts must raise obstacles to their jurisdiction sua sponte, *see Fort Bend Cty. v. Davis*, 587 U.S. 541, 548 (2019). "[W]hile complaints filed by *pro se* litigants are held to a less stringent standard than those applied to formal pleadings drafted by lawyers, even a *pro se* plaintiff bears the burden of establishing that the Court has subject matter jurisdiction." *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010) (cleaned up).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550

U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

### III.  ANALYSIS

WMATA moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Dkt. 17. It claims that sovereign immunity generally bars Tillmon's ADA and FMLA claims. Though WMATA acknowledges that States cannot claim sovereign immunity for FMLA family-care claims, it argues that Tillmon has not properly raised one, Mot. to Dismiss at 4–5, which the Court will address under Rule 12(b)(6).

#### A.  Rule 12(b)(1)

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). "[M]oney damages are the exception when sovereigns are defendants." *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 43 (2012). The test for determining if a State has consented to suit in federal court "is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (cleaned up). It requires a "clear declaration of [the State's] intent to submit to federal court jurisdiction." *Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004). Absent a waiver of sovereign immunity, Congress may abrogate States' sovereign immunity only if it "unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Garrett*, 531 U.S. at 363 (cleaned up).

WMATA generally possesses sovereign immunity. WMATA was "created by a compact" between Virginia, Maryland, and the District of Columbia, and with the consent of Congress. *Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000). "[E]ach [state] conferred its immunity upon WMATA." *Id.* Because ADA claims against States are barred by sovereign immunity, they are also barred against WMATA. *Hopps v. WMATA*, 480 F. Supp. 2d 243, 256 (D.D.C. 2007) (citing *Jones*, 205 F.3d at 432). FMLA self-care claims are also barred by sovereign immunity, notwithstanding Congress's intent to abrogate States' sovereign immunity for those claims. *Coleman*, 566 U.S. at 37, 43–44; *see Jones*, 205 F.3d at 432. Thus, because WMATA has not waived its sovereign immunity or voluntarily invoked federal jurisdiction here, *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002), the plaintiff's ADA claims and FMLA self-care claims are barred by sovereign immunity.

Tillmon contends that sovereign immunity does not bar these claims because WMATA "benefit[s] from federal funds." Opp'n at 2. He cites to *Barbour* for the proposition that when States accept federal funding, they often waive sovereign immunity. It is true that Congress, exercising its Spending Clause powers, may "condition the receipt of federal funds on . . . a waiver [of sovereign immunity]." *Barbour*, 374 F.3d at 1170. *Barbour*, however, dealt with the Rehabilitation Act, which was enacted under the Spending Clause, 374 F.3d at 1161, not the ADA, which was not, *Garrett*, 531 U.S. at 374. Because States do not receive federal funds under the ADA, they have not waived their sovereign immunity with respect to those claims. *Id.* The Rehabilitation Act and the ADA incorporate the same standards of liability and provide similar statutory protections, *see Alexander v. WMATA*, 826 F.3d 544, 546 (D.C. Cir. 2016); *Austin v. WMATA*, No. 19-cv-2718 (DLF), 2020 WL 2962609, at \*7 (D.D.C. May 28, 2020), but the plaintiff has only brought an ADA claim, *see* Am. Compl. ¶¶ 43–51.

5

Tillmon also seems to suggest that WMATA may have waived its sovereign immunity because it "operat[es] under federal laws" and because it voluntarily invoked "federal jurisdiction." Opp'n, at 2. But operating under federal law does not constitute a waiver of sovereign immunity. *See Barbour*, 374 F.3d at 1163. Nor has WMATA voluntarily invoked federal jurisdiction either by initiating this suit or by removing this action from state to federal court. *See Lapides*, 535 U.S. at 619. Accordingly, the Court will dismiss Tillmon's ADA and FMLA self-care claims under Rule 12(b)(1).

Although States have sovereign immunity for ADA and FMLA self-care claims, they do not have sovereign immunity for family-care claims. *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 740 (2003). The parties agree on this point. *See* Opp'n, at 3; Mot. to Dismiss at 5. But the parties disagree as to whether Tillmon has properly pled a family-care claim. *See* Opp'n at 3; Mot. to Dismiss at 5.

**B.     Rule 12(b)(6)**

The government is correct that Tillmon's complaint does not explicitly plead an FMLA family-care claim. Mot. to Dismiss at 5 n.1. But "a complaint need not pin plaintiff's claim for relief to a precise legal theory," because Rule 8 of the Federal Rules of Civil Procedure "generally requires only a plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (cleaned up). "Courts have extended this liberal pleading standard even further for plaintiffs proceeding pro se." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 537 (D.C. Cir. 2024), *cert. denied sub nom. Spence v. Dep't of Veterans Affs.*, No. 24-468, 2024 WL 4874689 (U.S. Nov. 25, 2024). As a result, "courts must treat technical deficiencies in the complaint leniently and scrutinize the entire pleading to determine if any legally cognizable claim can be found." *Id.* at 538 (cleaned up).

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise" of family-care rights, or to "discriminate against any individual" for exercising them. 29 U.S.C. § 2615(a)(1), (2). Plaintiffs alleging FMLA violations can recover only for "compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief, including employment, reinstatement, and promotion." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (quoting 29 U.S.C. § 2617(a)(1)(A)(i)(I)-(II), (a)(1)(B)).

The FMLA's family-care provisions guarantee that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). A serious health condition is defined as an "illness, injury, impairment, or physical or mental condition" that involves "inpatient care" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see* 29 C.F.R. § 825.113(a); *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 155 (D.D.C. 2013). Continuing treatment requires (1) at least four consecutive days of incapacity; (2) at least one "in-person treatment visit" with a health care provider "within seven days of the first day of incapacity;" and (3) "a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115(a)(2)–(3). A serious car accident injury can be considered a severe health condition if it results in injuries that require a regimen of continuing treatment, such as physical therapy, or if it otherwise leaves the victim unable to work. *See Cobbs v. Bluemercury, Inc.*, 746 F. Supp. 2d 137, 144 (D.D.C. 2010); *Chipman v. Cook*, No. 3:15-cv-143 KGB, 2017 WL 1160585, at *10 (E.D. Ark. Mar. 28, 2017).

7

Construing Tillmon's complaint liberally, as this Court must, *Spence*, 109 F.4th at 538, several factual allegations support a family-care claim. Tillmon alleges that his "son was involved in a car accident," Am. Compl. ¶ 14; that he took five days off "to care for his son," *id.*; and that WMATA took an "adverse administrative action" by requiring him to "undergo drug and alcohol testing" after he returned to work following a period of caring for his son, *id.* ¶ 47(e).

On these facts, it is plausible that Tillmon's son experienced four days of incapacity, which is the first requirement for a health condition to qualify as severe. 29 C.F.R. § 825.115(a). Although Tillmon does not allege that the car accident injury required an "in-person treatment visit" "within seven days of the first day of incapacity," or resulted in a "regimen of continuing treatment under the supervision of the health care provider," *id.* § 825.115(a)(2)–(3), serious car accident injuries can qualify as severe health conditions, *see Cobbs*, 746 F. Supp. 2d at 144. It is also possible that WMATA's alleged retaliatory drug testing resulted in loss of "compensation [or] benefits" or "other monetary losses sustained 'as a direct result of the violation.'" *Ragsdale*, 535 U.S. at 89 (quoting 29 U.S.C. § 2617(a)(1)(A)(i)(I)-(II)). But Tillmon has not alleged that he incurred monetary damages to pay for his drug testing or related transportation costs, or that he was required to take unpaid leave for testing. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 160, 163 (D.C. Cir. 2015). Nor has he alleged facts that could reasonably show equitable relief would be warranted. *Ragsdale*, 535 U.S. at 89. Thus, even construing his complaint liberally to allege a FMLA family-care claim, Tillmon has not adequately pled a FMLA family-care claim.

Accordingly, it is

**ORDERED** that that defendant's Motion to Dismiss, Dkt. 17, is **GRANTED** in part under Rule 12(b)(1) and in part under Rule 12(b)(6). It is further

**ORDERED** that the Amended Complaint, Dkt. 8, is dismissed without prejudice. It is further

**ORDERED** that on or before April 29, 2025, the plaintiff shall file either (1) a motion to file an amended complaint that addresses the deficiencies identified in this opinion[2] or (2) a motion that provides good cause for an extension of time. If the plaintiff fails to file a timely motion on or before May 2, 2025, the Court will close this case.

*Dabney L. Friedrich*
DABNEY L. FRIEDRICH
United States District Judge

March 18, 2025

---

[2] As explained, Tillmon's complaint fails to allege a family-care-related FMLA claim because it fails to allege that his son experienced four days of incapacity; that his son's injury required an "in-person treatment visit" "within seven days of the first day of incapacity" as a result of the accident, or resulted in a "regimen of continuing treatment under the supervision of the health care provider;" and that Tillmon himself lost compensation or benefits, incurred other monetary losses, or is otherwise entitled to equitable relief.